MAYTE LOPEZ,

      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social
Security Administration,

      Defendant.

_____/

## ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court as a result of Motions for Summary Judgment filed by Plaintiff MAYTE LOPEZ ("Lopez" or "Plaintiff") and Defendant NANCY A. BERRYHILL ("the Commissioner" or "Defendant) on August 10 and October 19, 2018, respectively. [D.E. 22, 25]. Both parties filed Responses in Opposition to the other party's Motion, [D.E. 26, 27], and Plaintiff filed a Reply on November 19, 2018. [D.E. 28]. The matters are now fully-briefed and ripe for disposition. Following our review of the arguments set forth by the Commissioner and Lopez, in addition to the record before us and the governing legal authorities, we hereby hold that Plaintiff's Motion is **DENIED**, Defendant's Motion is **GRANTED**, and the decision of the Commissioner should be **AFFIRMED**.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     *Relevant Medical Documentation*

On February 14, 2014, Plaintiff sought treatment with Dr. Samuel Mowerman and reported to the doctor that she was "a mess," indicating that Prozac had helped control her depression but caused her at times to become "incredibly angry." [R. at 427]. Her depression allegedly stemmed from her son's disability and conflicts she occasionally had with the child's father. *Id*. at 424. Plaintiff reported a lack of energy and motivation, in addition to crying, sadness and insomnia. *Id*. Lopez denied suicidal or homicidal ideations. *Id*. at 425. Dr. Mowerman diagnosed Plaintiff with bipolar disorder and recommended she continue with medication and participate in therapy to help "ventilate feelings of depression." *Id*. at 426.

Plaintiff next treated with Mowerman on May 21, 2014. [R. at 423]. She described "troubled" feelings due to her significant other being laid off from his job, which caused difficulties in her obtaining medical insurance for her son. *Id*. She reported feeling "sad and overwhelmed." *Id*. The next day she treated with Ana Maria Villaverde, a social worker, who found her mood to be "normal" and her affect "consistent." *Id*. at 421. Plaintiff presented with a Global Assessment of Functioning ("GAF") score of 65 (out of a scale of 100), indicative of mild depressive symptoms. *Id*. The notes from a follow-up with Ms. Villaverde for an appointment occurring a week later contained similar findings. *Id*. at 419-20.

On June 5, 2014, Dr. Mowerman assigned Plaintiff a GAF score of 75 after she reported feeling much better. *Id*. at 417. Plaintiff reported "doing very well" once

again on July 2, 2014, although she still experienced "panic-like" episodes on occasion. *Id*. at 416. But things took a turn for the worse in September, when Plaintiff said she felt "terrible" and told Dr. Mowerman she had concerns about an operation her disabled son might need on his leg. *Id*. at 415. She also reported difficulty sleeping. *Id*. Dr. Mowerman assigned her a GAF score of 55, and recorded her mental status as "distressed." *Id*. Those feelings of distress continued into her next visit on October 21, 2014, when she reported having "difficulties" with both her children and claimed she had reduced her medications. *Id*. at 466. Dr. Mowerman assigned her a GAF score of 52 on that date. *Id*.

On November 12, 2014, Lopez reported to Dr. Mowerman that she felt worried her son might need an additional knee operation, and that she felt a "lack of emotional control" with "periods of sadness[,] though not intense." *Id*. at 503. Mowerman assigned her a GAF score of 58. Two months later, on January 7, 2015, the GAF score dropped a few points to 55, which remained consistent during her appointment on January 14 even though Plaintiff reported feeling "a little better." *Id*. at 501-02. On that same date, Dr. Mowerman completed a psychiatric and psychological evaluation, where he found Lopez had "marked" difficulties in maintaining concentration, persistence and pace, with "moderate" limitations in her activities of daily living and social functioning. *Id*. at 485. He also noted Lopez suffered from "one or two" repeated episodes of decompensation within a year, with those episodes lasting for at least two weeks. *Id*. at 486. Mowerman supplemented this evaluation later that year and described Lopez as having "extreme" limitations in her ability to understand,

remember and apply information; interact with others, concentrate, persist and maintain pace; and adapt or manage herself. *Id.* at 561.

On February 3, 2015, Lopez reported feeling better, with improved sleeping habits helped by medication. *Id.* at 499. Things changed on a visit five weeks later, where she said she felt "very bad" and described issues with her family that caused her to feel anger and sadness. *Id.* at 644. Dr. Mowerman found that she had "clinically significant symptoms" on a standardized depression screening, assigned her a GAF score of 50, and recommended her for hospitalization. *Id.* Lopez agreed to be hospitalized and was transported to the emergency room that same day. *Id.*

After her hospitalization, Plaintiff returned to Dr. Mowerman on April 22, 2015 for a follow-up appointment. She reported feeling better, and discussed feelings of anxiety and difficulties sleeping. *Id.* at 641. The notes from a mental status examination performed during that visit indicated that Lopez denied suicidal or homicidal ideations, and that her thought process was logical, organized and associated with good attention and concentration. *Id.* at 642.

Later that summer, on August 18, 2015, Plaintiff described feeling "quite anxious" and reported that only certain medications improved her condition. *Id.* at 636. Nevertheless, the mental status examination completed by Dr. Mowerman indicated that Lopez had denied hallucinations and delusions, and that her cognitive functioning was "intact," and her insight "fair." *Id.* at 637. Two months later, on October 2, 2015, Dr. Mowerman assigned her a GAF score of 58, and the patient once again described troubled feelings concerning her son's disability and the associated

medical treatment. *Id.* at 633. Despite these complaints, Mowerman again found Plaintiff's cognitive functioning to be intact, and described her insight as fair.

Towards the end of 2015, Dr. Mowerman began opining on Plaintiff's activities of daily living. On December 9 of that year, he found those activities to be "very difficult" due to her depressive symptoms. *Id.* at 626. Her condition continued to fluctuate leading into 2016, with some reports of an improving condition contrasted with a worsening of her symptoms. *Id.* at 617. On May 4, Mowerman noted symptoms related to agoraphobia, but indicated she had been sleeping better. *Id.* at 611. Mowerman described Plaintiff's progress as "good" on that same date. *Id.* at 613.

On July 19, 2016, Dr. Mowerman noted that Lopez's activities of daily living were "not difficult at all" due to her depressive symptoms. *Id.* at 606. On August 10, she discussed continued improvement in her condition, claiming that she had been "feeling in better control, sleeping well, [and] eating well." *Id.* at 593. Dr. Mowerman found a lowered dosage of one of her medications to be improving her condition, and once again noted that her activities of daily living were not difficult at all because of the depressive condition. *Id.* at 594. The doctor made this same finding on November 8 and December 7, 2016, and on February 1, 2017. *Id.* at 118, 564, 575.

### B.    *Administrative Proceedings*

Lopez filed for disability benefits on September 17, 2014, alleging an onset date of April 1, 2014. [R. at 157, 344]. The Commissioner denied the request for benefits on February 19, 2015. *Id.* at 288. Lopez sought reconsideration of the Commissioner's decision, which was again denied on February 2, 2015. [R. at 237]. Plaintiff then

requested that her case be heard by an ALJ, and the Commissioners granted her request on July 11, 2016. [R. at 248].

On February 6, 2017, ALJ Joseph Dent held a hearing on Plaintiff's claim. *Id.* at 59. Lopez and her attorney were joined by vocational expert ("VE") W.R. Harvey at the hearing. Plaintiff testified on her own behalf, answering questions from both the ALJ and her lawyer. Plaintiff described her condition as "mood changes," bipolar disorder, anxiety and depression. *Id.* at 70-71. She told the ALJ she had difficulties being around other people because it would cause her to suffer from panic attacks. [R. at 70]. She also claimed her condition caused her to argue with clients at work. *Id.* at 71. Lopez told the ALJ she cannot focus and suffers from insomnia, despite taking medications to treat those conditions, and often suffers drowsiness as a side effect. *Id.* at 73.

In terms of her daily activities, Lopez stated she does not drive and has not done so since 2009. *Id.* at 65. She has two children, one of whom suffers from a physical disability that required him to undergo over twelve (12) surgeries. *Id.* at 67-69. She occasionally performs chores around the house, and admitted she was able to complete certain tasks, although sometimes "she can't finish." *Id.* at 72. As a result of her bipolar disorder, she often experiences periods of "euphoria," but during times when she feels "low" she stays in bed for the entire day. *Id.* at 77. Her son and a friend assist her during her "low" periods, and both help her take care of her other child. *Id.* at 77-78. Her oldest son will also cook for her and shop for groceries during these low periods. *Id.* at 78.

Plaintiff worked in beauty services prior to her disability application, assisting customers with "manicures, pedicure[s], waxing [and] facials." *Id*. at 69. She worked as an independent contractor during this time. *Id*. at 70. Lopez stated she was a "pretty good" employee but, as a result of her condition, found it too difficult to work. *Id*. at 82, 88. Those difficulties included an inability to focus and an unwillingness to speak with her clients. *Id*. at 88-89. She has not attempted to see clients in her own home, even though she discussed extensive discomfort when working at the spa. *Id*. at 88.

The VE categorized Lopez's former work as a "cosmetologist," found at section 332.271-010 of the Dictionary of Occupational Titles ("DOT"). *Id*. at 92. That work requires "light physical demands" and a Specific Vocational Level ("SVP") of 6, indicative of "skilled" work. *Id*. The ALJ asked the VE whether a hypothetical claimant, with medical conditions similar to those described by Lopez and including certain limitations,[1] would be able to return to past relevant work as a cosmetologist. *Id*. The VE answered no. *Id*. at 93.

The VE did find, however, that such a hypothetical individual could be employed in several positions as they currently exist in the national economy: (1) industrial cleaner, DOT section 381.687-018, a medium-exertional position with an SVP level of 2; (2) horticultural worker, DOT section 401.687-010, a medium-

---

[1] Those limitations included avoidance of all exposure to hazardous machinery and heights, with work limited to simple, routine, repetitive tasks requiring only occasional decision-making, changes in the work setting, and interaction with the public, supervisors, and co-workers.

exertional position with an SVP level of 2; (3) mailroom clerk, DOT section 209.687-026, with "light" physical demands and an SVP level of 2; and (4) merchandise marker, DOT section 209.587-034, a light-exertional position with an SVP level of 2. *Id.* at 93. When the ALJ reduced the hypothetical individual's exertional limits to requiring "light" work, with limitations on the individual's ability to perform certain physical activities, the VE testified that such an individual would still be able to work in both "light" positions of merchandise marker and mailroom clerk. *Id.* The VE also found that a third job would be possible for that individual: laundry sorter, DOT section 361.687-014, with light physical demands and an SVP level of 2. *Id.* at 94.

### C.     *The Administrative Law Judge's Decision*

ALJ Dent issued his opinion on February 28, 2017. [R. at 38-51]. He chose to deny Plaintiff's request for benefits, finding that Lopez did not qualify as "disabled" within the meaning of the Social Security Act. *Id.* at 51. In doing so, the ALJ applied the sequential evaluation process that must be used in these types of claims. *See* 20 C.F.R. §§ 404.1520; 416.920. The process requires the ALJ to consider, in sequence, whether a claimant: (1) is working; (2) suffered from a "severe" impairment as defined by the regulations; (3) has a condition that meets or medically equals those found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (a "listed impairment"); (4) can return to past relevant work; and (5) if not, whether he can perform other work as it exists in the national economy.[2]

---

[2]     If, at step four, a claimant establishes that an impairment prevents him from performing past relevant work, the burden shifts to the Commissioner to show that other jobs exist in the national economy which, given the claimant's limitations, he

At the first step, the ALJ determined that Lopez had not engaged in substantial gainful activity since her alleged onset date. [R. at 40]. Moving to step two, ALJ Dent found that Lopez suffered from the following severe impairments: "depression/bipolar disorder; anxiety; and panic disorder." *Id*. At step three, the ALJ concluded that Plaintiff's severe medical conditions did not meet or equal the severity of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix. *Id*. at 41.

Before moving to steps four and five, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). *Id*. at 43. The regulations define a claimant's RFC as the ability to perform physical and mental work activities on a sustained basis despite limitations arising from the alleged condition. 20 C.F.R. §§ 404.1520(e); 416.920(e). The ALJ completed this intermediary step, finding that Lopez

> has the residual functional capacity to perform a full range of work at all exertional levels, except she must avoid all exposure to hazardous machinery and unprotected heights. The claimant is also limited to simple, routine, repetitive tasks in a low-stress job (which is defined as involving only occasionally decision making, only occasional changes in the work setting, and only occasional interaction with [the] public, coworkers, and supervisors, with no production rate or pace work similar to that of an assembly line).

*Id*. Based on this description of Plaintiff's RFC, the ALJ found she could not perform past relevant work. *Id*. at 48. ALJ Dent concluded, however, that there were other jobs available in the national economy that Plaintiff could perform, finding that she

---

or she can still perform despite the alleged medical condition. *Chester v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then rebut the finding and show that he cannot perform the work suggested by the Commissioner. *Id*.

could work as an industrial cleaner, horticultural worker, mailroom clerk, merchandise marker, and laundry sorter. *Id*. at 49. Thus, the ALJ determined that Plaintiff could not be considered disabled for purposes of social security, since she could perform the work required by these positions. *Id*. at 51.

Plaintiff appealed the ALJ's decision on May 1, 2017. *Id*. at 291. The Administration's Appeals Council denied the request for review on December 18, 2017, *id*., and Plaintiff timely sought review of that decision in this Court on February 18, 2018. [D.E. 1].

## II. *LEGAL STANDARD*

The Social Security Act gives federal courts the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision, however, is limited to the following determinations: (1) whether the Commissioner's findings are supported by the substantial evidence contained in the record; and (2) whether the Commissioner applied the correct legal standards." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

We must affirm the Commissioner's decision if it is supported by substantial evidence. Substantial evidence is "more than a scintilla, but less than a preponderance," comprised of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th

Cir. 1987). This is a deferential standard, and we cannot decide the facts anew, re-weigh the evidence, or substitute or own judgment for that of the Commissioner, even if we feel the evidence preponderates against it. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). It is incumbent upon the reviewing court to examine the findings and decision of the Commissioner in light of the record in its entirety, not only that evidence which supports the decision. *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984). No such presumption of validity attaches to the ALJ's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III. ANALYSIS

Plaintiff makes four arguments to challenge the Commissioner's decision: (1) the ALJ erred when he found that Plaintiff's medical condition did not qualify as a "listed" impairment at step three; (2) Dr. Mowerman's medical source opinions should have been given "controlling" weight as required by law; (3) the ALJ's residual functional capacity analysis is not supported by the substantial evidence and is based on legal error; and (4) the Commissioner's appointment of an ALJ to hear her case violates the Appointments Clause of the United States Constitution. [D.E. 22].

### A. *The Appointments Clause*

Plaintiff's fourth argument advances her theory that the entire process by which the ALJ denied her disability request is constitutionally invalid. Since this sets forth a purely legal argument, we will begin with this contention.

Pursuant to the Appointments Clause of the United States Constitution,

"Officers of the United States" may only be appointed by the President, "Courts of Law," or "Heads of Departments." U.S. CONST. Art. II., § 2, cl. 2; *see also Lucia v. S.E.C.*, – U.S. –, 1138 S. Ct. 2044, 2050 (2018). In *Lucia*, the Supreme Court confronted an Appointments Clause challenge to an ALJ appointed by the Securities and Exchange Commission. *Lucia*, 1138 S. Ct. at 2049-50. In that case, the SEC charged Lucia with misleading investors in connection with retirement products he offered as part of his business. *Id.* at 2050. The ALJ ruled that the plaintiff's products were misleading, required him to pay hundreds of thousands of dollars in fines, and banned him from working in the investment industry for the remainder of his career. *Id.*

Lucia appealed the decision to the SEC, arguing that the ALJ who heard his case had not been appointed by a method conforming with the Appointments Clause of the United States Constitution. *Id.* He then challenged the penalties he received in federal court, where he once again raised a challenge based on the Appointments Clause argument set forth before the SEC. *Id.* The D.C. Circuit Court of Appeals denied the challenge, but when the Supreme Court granted certiorari, it reversed the decision and remanded the case, finding that his agency appeal should be heard by a different ALJ who had been appropriately appointed. *Id.* at 2055.

Lopez now argues that *Lucia* applies to the Social Security Administration and that ALJ Dent had not been properly appointed in the method prescribed by the Constitution. [D.E. 22, p. 19-20]. In response, the Commissioner argues that Lopez forfeited this claim by failing to raise it at the administrative level. [D.E. 25, p. 15].

Plaintiff, arguing against waiver, contends that her challenge is timely pursuant to the Supreme Court's decision in *Sims v. Apfel*, 508 U.S. 103, 112 (2000), which states that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."

We agree with the Commissioner.[3] "[O]ne who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182-83 (1995) (emphasis added); *see also Lucia*, 138 S.Ct. at 2055 ("This Court has held that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief.") (quotation omitted). Lopez did not "timely challenge" the constitutional validity of the ALJ's ability to hear her case when she failed to make her Appointments Clause argument in the administrative proceedings below. Such a ruling is consistent with District Courts that have recently confronted the same issue. *See generally Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 905 (E.D. Mich. 2018) ("As of this date, the courts that have considered the [Appointments Clause] issue have unanimously rejected attacks on the validity of the ALJ's appointment under *Lucia* brought under 42 U.S.C. § 405(g) where the claimant failed to make a constitutional challenge at the

---

[3]    In reaching this conclusion, we decline to make a determination as to whether Social Security ALJs are "Officers of the United States" subject to the Appointments Clause.

administrative level."); *Britt v. Berryhill*, 2018 WL 628211, at *2 (W.D.N.C. Nov. 30, 2018) (denying motion to remand because claimant failed to raise the Appointments Clause issue during the administrative proceedings); *Hughes v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."); *Davidson v. Comm'r of Soc. Sec.*, 2018 WL 4680327, at *2 (M.D. Ten.. Sept. 28, 2018) ("Because Plaintiff did not raise her as applied constitutional challenge at the administrative level or argue that she had good cause for her failure to do so, Plaintiff has waived her challenge to the appointment of her Administrative Law Judge).

Conceding this fact, Lopez nevertheless argues she failed to raise such a challenge at the administrative level because it would have been impossible for her to do so. *Id*. Specifically, Lopez argues that the Commissioner's decision became final on December 18, 2017, but that the Supreme Court did not issue the *Lucia* decision until June 21, 2018 – almost six months post-denial. *Id*. Due to the timing of the *Lucia* decision, Lopez argues she should "be excused for not raising an Appointments Clause claim during the administrative proceedings, [as] doing so would have been a futile waste of time." *Id*. at 19.

The facts presented by the *Ryder* and *Lucia* are fatal to this argument. In *Ryder*, the petitioner – a member of the United States Coast Guard – challenged his conviction by court martial. *Ryder*, 515 U.S. at 179. He appealed the conviction to the Coast Guard's Court of Military Review, raising an Appointments Clause challenge

to the composition of the issuing court. *Id.* at 179. After the Court of Military Review rejected his Appointments Clause challenge and largely affirmed his conviction, Ryder appealed to the United States Court of Military Appeals, which agreed that two of the three judges on the Court of Military Review panel had been appointed in violation of the Appointments Clause. The administrative appeals court nevertheless affirmed Ryder's conviction, ruling the actions of these judges were *de facto* valid. *Id.* at 179-80. The Supreme Court reversed, finding that the lower court erred when it accorded "*de facto* validity to the actions of the civilian judges of the Court Guard Court of Military Review." *Id.* at 188. In doing so, the Court took note that "petitioner challenged the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review" and "raised his objection to the judges' titles before those very judges and prior to their action on his case." Thus, in *Ryder* – which pre-dated *Lucia* by more than twenty years – the petitioner challenged the appointment of the military officers in the administrative proceedings, just as Plaintiff was free to do here.

Likewise, in *Lucia*, the Court held that the petitioner had raised a "timely" challenge to the appointment of the ALJ who heard his case because he first raised the issue during the administrative proceedings that took place before the SEC. *Lucia*, 138 S. Ct. at 2055. Lucia then re-asserted the claim to both the federal appellate court and the Supreme Court on appeal. *Id.* Thus, the petitioners in *Ryder* and *Lucia* both raised their Appointments Clause challenges at the administrative level, before the very "entities utilizing the deficiently appointed official or officials."

*Abington v. Berryhill*, 2018 WL 6571208, at *2 (S.D. Ala. Dec. 13, 2018). The impact of the timing of the *Lucia* decision was not the determining factor in both of those cases, so Plaintiff's argument must be rejected here.

If Plaintiff truly wished to raise an Appointments Clause challenge, *Lucia* and *Ryder* require her to have done so either during the proceedings before ALJ Dent, or to the Appeals' Council after the ALJ issued his decision. She did neither, and as such, her request for remand on this basis is denied.

### B.    *Dr. Mowerman's Opinions*

Lopez also challenges the weight the ALJ gave to opinions provided by her treating psychiatrist, Dr. Samuel Mowerman. [D.E. 22, pp. 7-14]. Plaintiff argues that those opinions should have been given "controlling" weight, as the law requires, because Mowerman's opinions "are fully supported by the Plaintiff's medical records, which [document] that the Plaintiff's psychiatric condition is very unstable." *Id.*, p. 8. Once again, we disagree.

A treating physician's testimony and opinions must be given "substantial to considerable weight" unless "good cause is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation omitted). "Good cause" exists if the ALJ finds: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed

to give little weight to treater's opinion because it was contradicted by other notes found in the physician's own medical records).

Here, substantial evidence supports the ALJ's decision to afford Dr. Mowerman's opinions "little" weight. ALJ Dent conducted a thorough examination of the medical records submitted from Dr. Mowerman's office, a large majority of which undercut Plaintiff's claims of a disabling mental condition. With regard to Plaintiff's early treatment with Dr. Mowerman, the ALJ noted that "global assessment of functioning (GAF) scores were in the 60s and 70s – indicating slight to mild impairments – and there were few references to clinically significant mental status examination signs/findings." [R. at 44]. ALJ Dent was also troubled by a lack of "follow-up records that correlate with the alleged onset date of disability." *Id.* In light of this information, coupled with records from Dr. Mowerman that failed to show Plaintiff suffering from memory loss or attention deficit, the ALJ found that "the medical evidence [did] not support the claimant's allegations of disabling symptoms" at the time she allegedly began suffering from her disability. *Id.*

ALJ Dent's analysis did not stop there, as he undertook an extensive examination of the full medical picture painted by Dr. Mowerman's own records. The ALJ discussed Plaintiff's fluctuating condition, which convinced him "the claimant has severe mental impairments." [R. at 45]. But "the dearth of recorded deficits in memory, attention and/or concentration" raised questions as to Dr. Mowerman's claims about Plaintiff's alleged debilitating condition and the extreme limitations that purportedly occurred as a result. The ALJ also targeted Dr. Mowerman's opinion,

made on January 14, 2015, that Plaintiff had suffered from "one or two episodes of decompensation…lasting at least two weeks," finding that "*no* evidence of a [decompensation] episode" could be found anywhere in the doctor's own medical records.

Moving to treatment that took place in 2016, the ALJ's analysis involved a discussion of various records from Mowerman that indicated Lopez showed signs of only mild symptomology, or that otherwise indicated she felt "fine." *Id*. Most notably, the ALJ found that on many occasions during their treatment, Dr. Mowerman declared Plaintiff's activities of daily living as being "not difficult at all," which directly undermined Dr. Mowerman's findings extreme limitations and marked difficulties in 2016. *Id*. at 46 ("Incredibly, Dr. Mowerman nonetheless opined in December 2016 that the claimant had "extreme" limitations[.] He offered no narrative analysis explaining why such limitations were appropriate, likely because there are none, as well as the fact the degree of limitations noted are so significant they strain the bounds of credulity."); *see also Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (ALJ was justified in affording "little" weight to treating physician who "merely checked boxes on a form without explaining how he reached his conclusions.").

Faced with such a record, the ALJ determined that Dr. Mowerman's opinions were inconsistent with the doctor's treatment notes. *See* R. at 47 ("The Administrative Law Judge has not ignored the claimant's reports and allegations, including her testimony. Yet again though, the claimant has not shown these to be consistent with the medical evidence and, in particular, the treatment notes from Dr. Mowerman.").

This provided legal support for his determination that those opinions were entitled to little weight, and the substantial evidence provides more than ample support for the decision to do so. As such, the ALJ did not commit error that would require remand.

Plaintiff's argument that the ALJ violated Social Security Ruling 16-3p is likewise unavailing. As an initial matter, Plaintiff's reliance on such a ruling may be misplaced here, as the Ruling deals with "subjective symptom evaluation," not whether or not medical opinions contained in the record should be given controlling weight. *See* SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016); *see also Wills v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1207938, at *4 (M.D. Ala. Mar. 14, 2019) (discussing SSR 16-3p in the context of "credibility issues").

Nevertheless, even if SSR 16-3p involved an ALJ's treatment of a medical source's opinion, we would nevertheless deny the Motion. The Ruling requires the Commissioner to evaluate an individual's symptoms considering all the evidence in the record; but there is no requirement that the ALJ refer to *every* piece of evidence, so long as the opinion utilizes enough analysis to satisfy a reviewing court that the ALJ gave all of the relevant evidence before him its due regard. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). ALJ Dent clearly did so here, as evidenced by his thorough analysis of the records pertaining to Dr. Mowerman's treatment with Plaintiff before, during and after her alleged onset date. In light of this analysis, Lopez "must do more than point to evidence in the record that supports her position" that her condition is disabling. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604

(11th Cir. 2017). Instead, she "must show the absence of substantial evidence supporting the ALJ's conclusion." *Id.; see also Black v. Apfel*, 143 F.3d 383, 386 (11th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]"). She has failed to do so here.

For these reasons, we find no error in the ALJ's decision not to give controlling weight to Dr. Mowerman's opinion, and will not remand the matter to the Commissioner based on this argument.

### C.    *The Step Three Determination*

In her third argument, Plaintiff states the ALJ committed error at step three when he determined that Lopez did not suffer from a "listed impairment." A listed impairment is one that is considered severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If a claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(a)(4)(iii), (d).

To meet Listing 12.04 for "depressive, bipolar and related disorders," a claimant must have (A) a qualifying diagnosis and either (B) extreme or marked limitation of two mental functioning categories or (C) two years' history of a "serious and persistent" mental disorder and both treatment, therapy, or a highly structured setting and marginal adjustment. *See* 20 C.F.R., Part 404, Subpt. P, App. 1, § 12.04. Although the ALJ found that Plaintiff did, indeed, have a qualifying diagnosis, he also determined that Lopez could not satisfy the Paragraph B and C criteria.

First, the ALJ found that Plaintiff could not satisfy Paragraph B because she only suffered "moderate" – not "marked" – limitations in all mental functioning categories, which included her ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace, and adapt and manage herself on a daily basis. [R. at 41-42]. The substantial evidence supports this determination because – as we discussed above – the ALJ conducted a complete examination of the medical records supporting Lopez's claims and found that the debilitating conditions she described were not supportable with the record evidence. We likewise find the substantial evidence supports the ALJ's determination as to the Paragraph C criteria, as the ALJ noted that the record did not contain enough evidence to find Lopez suffered "marginal adjustments" despite her long treatment history related to her mental condition. *See generally* R. at 47 ("No reasonable mind could accept such a [significant] assessment when the mental status examination signs/findings routinely have shown only modest results.").

Once again, Plaintiff's sole argument in support of this claim involves her citation to a group of medical records prepared by Dr. Mowerman that she argues definitively establishes her qualification as suffering from a "listed" impairment. [D.E. 22 at 5-7]. But those records were rightly given "little" weight by the ALJ because of the inconsistencies between Dr. Mowerman's opinions as to the alleged disabling condition and the fairly modest symptoms described in the doctor's treatment notes, including those showing Plaintiff having no issues with activities of daily living. Thus, the only evidence set forth by Lopez to challenge the finding at

step three come from a single doctor whose opinions were rightfully afforded little weight, and this cannot satisfy her burden in showing her impairments meet or equal one of the listings. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

We also reject Plaintiff's claim that the ALJ's "boilerplate" statement as to Lopez's ability to meet the Paragraph C criteria requires remand. In the Eleventh Circuit, an ALJ's finding that a claimant's impairments do not meet or equal a listing "may be implied from the ALJ's decision." *James v. Comm'r, Soc. Sec. Admin.*, 657 F. App'x 835, 838 (11th Cir. 2016); *Hutchinson v. Bowen*, 787 F.3d 1461, 1463 (11th Cir. 1986) ("We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments."). Contrary to Plaintiff's argument, the law does not require the ALJ to provide a thorough explanation as to why or how he determined that Lopez did not meet the Paragraph C criteria when it is made implicit in his subsequent analysis at Steps Four and Five. *See Hutchinson*, 787 F.3d at 1463 ("While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination.").

For these reasons, we reject Plaintiff's arguments with regard to any alleged failure to properly evaluate Lopez's condition at Step Three. *See Tuberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) ("We conclude that – though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05 – substantial record evidence supports that Rowell's condition did not actually or

functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled.").

### D. *Plaintiff's Residual Functional Capacity*

In her last argument, Plaintiff contends that the ALJ's RFC analysis: (1) is not supported by the substantial evidence; (2) failed to comply with Social Security Ruling 98-6p; and (2) wrongly ignored certain testimony elicited from the VE upon cross examination from Lopez's attorney. Each argument fails.

The regulations define residual functional capacity as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 1545(a)(1). To determine a claimant's RFC, an ALJ must make an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitation caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). The ALJ must consider the medical opinions in conjunction with all of the other evidence of record, and must also take into account all of the medically determinable impairments, including those not deemed "severe," and the total limited effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (the "ALJ must consider the applicant's medical condition as a whole.").

Plaintiff's legal challenges to the ALJ's RFC analysis are unavailing.[4] Lopez

---

[4]     A large portion of her argument focuses on Plaintiff's contention that the records of Dr. Mowerman were not considered when the ALJ made his RFC determination. [D.E. 22, p. 15-16]. This is not the case; the ALJ considered Dr. Mowerman's records, found them inconsistent and contradictory to other evidence in the record, and chose to give them little weight. As discussed above, the substantial

first contends that the RFC determination is not supported by substantial evidence because the ALJ made a "vague" finding that Plaintiff could work in a low-stress job, which does not comply with SSR 96-8p. That Ruling states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> …
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.
>
> …
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

The ALJ's RFC determination complies with SSR 96-8p. In making his determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical

---

evidence supports this decision, and the ALJ's analysis regarding the doctor's note does not constitute legal error.

evidence and other evidence." [R. at 43]. Contrary to Plaintiff's argument, the finding is not vague, as the decision makes clear the ALJ considered the Plaintiff's entire medical history, in addition to the credibility of her subjective complaints. [R. at 44-47]. The ALJ also addressed the medical source opinions from Dr. Mowerman and his reasons for giving that opinion "little" weight, explaining that it was inconsistent with other evidence of record, including the doctor's own treatment notes. *Id*. He then discussed the effects of Plaintiff's impairments on her ability to work on a sustained basis. *Id*. at 48-50. This suffices under the law. *See Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("Following [SSR 96-8p's] rubric, the ALJ fully discussed and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment has on [the claimant's] daily activities."); *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) ("[T]he ALJ complied with SSR 96-8p by considering [the claimant's] functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels.").

We also disagree that the ALJ committed reversible error when, at the hearing, he stated that the terms "marked" and "extreme" were not vocationally relevant with regard to the VE testimony. [D.E. 22, p. 19]. The use of the terms "marked" and "extreme" – and the disagreement over whether those terms are vocationally relevant – is nothing more than semantics. The ALJ posed a complete hypothetical question to the vocational expert, which included all of the limitations resulting from Plaintiff's condition that the ALJ found credible. [R. at 49-50; 92-94]. Additionally, even though

the ALJ found that Dr. Mowerman's "marked" and "extreme" limitations to be vocationally irrelevant, he nevertheless rejected the doctor's contentions as inconsistent with the evidence of record.

The ALJ is "not required to include findings in the hypothetical that he rejected as unsupported," and so there was no requirement he needed to address the additional contentions raised by Plaintiff's counsel on cross-examination of the VE. *Brown v. Astrue*, 298 F. App'x 851, 853 (11th Cir. 2008) (quoting *Crawford*, 363 F.3d at 1161). As such, and despite Plaintiff's arguments to the contrary, the ALJ did not err in failing to adopt the vocational expert's testimony in response to a hypothetical that contained limitations the ALJ found to be unsupported by the record evidence. *See Crawford*, 363 F.3d at 1161; *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 137 (11th Cir. 2009) ("[I]f additional impairments asserted by a claimant are not supported by substantial evidence, they do not need to be included in a hypothetical."); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 888 (11th Cir. 2011) ("Having properly rejected the responses to Delia's hypothetical, the ALJ was free to accept the VE's responses to his own hypothetical question, fulfilling the burden placed on the Commissioner at step five to show that there are jobs in the national economy that [claimant] can perform. Accordingly, we affirm.").

## IV.    CONCLUSION

For the foregoing reasons, we hereby **ORDER** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's decision be

**AFFIRMED.** Judgment is now entered in favor of the Commissioner, and the action is **CLOSED**.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 29th day of March, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge